IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LARRY M. HOAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-CV-402-S-BLW |
| | ) | (Lead Case) |
| vs. | ) | |
| | ) | **MEMORANDUM DECISION** |
| I.D.O.C. WARDEN SMITH, | ) | **AND ORDER** |
| I.C.C. WARDEN VALDEZ, | ) | |
| and 1-13 DOES, | ) | Case No. 1:08-CV-530-S-BLW |
| | ) | (Member case - Romero v. CCA) |
| Defendants. | ) | Case No. 1:09-CV-01-S-BLW |
| | ) | (Member case - Gilbert v. Hardison) |
| | ) | Case No. 1:09-CV-010-S-BLW |
| | ) | (Member case - Riggs v. Rodriguez) |
| | ) | Case No. 1:08-CV-487-S-BLW |
| | ) | (Member case - Arthur Hoak v. |
| | ) | Valdez) |
| | ) | Case No. 1:09-CV-127-S-BLW |
| | ) | (Member case - Meeks v. Valdez) |
| | ) | Case No. 1:09-CV-122-S-BLW |
| | ) | (Member case - Hayes v. Valdez) |
| _____ | ) | |

## INTRODUCTION & PROCEDURAL HISTORY

Plaintiffs Larry M. Hoak, Shane Elloyd Romero, Shaun M. Gilbert, Marlin

Riggs, Arthur Allen Hoak, Robert L. Meeks, and Michael T. Hayes are or were

inmates in the custody of the Idaho Department of Correction (IDOC). Plaintiffs

each filed a Complaint alleging that prison officials were warned but failed to take

steps to protect them from assaults by prison gang members. All but Gilbert were

MEMORANDUM DECISION AND ORDER 1

housed at the Idaho Correctional Center (ICC) at the time of the incidents that are the subjects of the Complaints.[1]

On February 20, 2009, the Court consolidated *Larry Hoak v. Valdez*, *Romero v. CCA*, *Gilbert v. Hardison*, *Riggs v. Rodriguez*, and *Arthur Hoak v. Valdez* because of the similar subject matter. (Docket No. 9). Additionally, the Court identified the consolidated case as one appropriate for pre-answer mediation and ordered the parties not to file "additional papers or pleadings in this case until further order of the court." *Id.* The Court also stayed and administratively terminated the case pending appointment of counsel for Plaintiffs. *Id.*

On April 30, 2009, the Honorable Candy W. Dale consolidated *Meeks v. Valdez* with *Larry Hoak v. Valdez.* (1:09-CV-127-S-CWD, Docket No. 6.) Judge Dale also ordered that "when this case is consolidated, it shall be stayed and administratively terminated, unless Judge Winmill find[s] it appropriate to allow Defendants to file summary dismissal motions on the issue of exhaustion of administrative remedies. Nothing further shall be filed in this case until Judge Winmill issues another order in that case." (*Id.*) On May 4, 2009, the Honorable

---

[1]Gilbert was housed at the Idaho State Correctional Institution (ISCI) at the time of the incidents giving rise to the Complaint, and it is not the subject of the current Motion to Dismiss. Riggs was housed at the Idaho Correctional Center (ICC) at the time of the incidents giving rise to his Complaint. His Complaint is not the subject of the current Motion to Dismiss, but he nevertheless filed an opposition to the Motion to Dismiss, alleging that he complied with the exhaustion requirement. (Docket No. 35.)

MEMORANDUM DECISION AND ORDER 2

Ronald E. Bush consolidated *Hayes v Valdez* with *Larry Hoak v. Valdez*, and entered an Order similar to Judge Dale's Order.  (1:09-CV-122-S-REB, Docket No. 3.)

On June 1, 2009, the Court granted Defendants' Motion to Reconsider (Docket No. 21), "permitting Defendants to file a motion to dismiss for failure to exhaust administrative remedies, so that the issue of exhaustion can be resolved prior to appointment of counsel and pre-answer mediation."  (Docket No. 26.)

Defendants filed their Motion to Dismiss (Docket No. 29) arguing that the Plaintiffs Larry M. Hoak, Shane Elloyd Romero, Arthur Allen Hoak, Robert L. Meeks, and Michael T. Hayes failed to exhaust their administrative remedies prior to filing suit.  Each Plaintiff responded in turn (Docket Nos. 33, 34, 36, 37, & 38). Defendants' Motion to Dismiss is fully ripe for decision.  Having reviewed the briefing submitted by the parties, as well as the record in this case, the Court has determined that oral argument in unnecessary.  Accordingly, the Court enters the following Order.

## STANDARD OF LAW GOVERNING
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants seek dismissal of Plaintiffs' Complaints for failure to exhaust administrative remedies.  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

If a plaintiff has failed to exhaust his administrative remedies, his claim is subject to dismissal without prejudice upon motion of the defendants. *See Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). An inmate must exhaust his remedies *prior* to filing suit; exhaustion cannot be accomplished during a suit or after a suit has been filed. *See McKinney v. Carey,* 311 F.3d 1198 (2002) (suit dismissed without prejudice where prisoner attempted to exhaust administrative remedies during pendency of suit).

"Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103. In *Woodford v. Ngo*, the prisoner had filed his

grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id*. at 86-87. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Further, the Supreme Court has held that where an inmate seeks money damages for a prison conditions claim, he or she must complete the prison administrative process for the claims, even if the process does not provide for money damages. *Booth v. Churner*, 532 U.S. 731 (2001). In *Porter v. Nussle*, the Supreme Court confirmed that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. 516, 532 (2002).

In *Wyatt v. Terhune*, the Ninth Circuit determined that the proper procedural device for alleging nonexhaustion of administrative remedies is "an unenumerated Rule 12(b) motion." 315 F.3d at 1119. To resolve such a motion, "the court may look beyond the pleadings and decide disputed issues of fact." *Id*. at 1119-20. In such instances, the court "has a broad discretion as to the method to be used in resolving the factual dispute." *Ritza v. Int'l Longshoremen's and Warehousemen's*

MEMORANDUM DECISION AND ORDER 5

*Union*, 837 F.2d 365, 369 (9th Cir. 1988).  However, the court "must assure that [the petitioner] has [had] fair notice of his opportunity to develop the record." *Wyatt,* 315 F.3d at 1120 n.14.

Distinguishing unenumerated 12b motions from motions brought under Rules 12b(6) and 56, the *Ritza* court further explained that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." 837 F.2d at 369 (internal citations and punctuation omitted).  Because failure to exhaust is an affirmative defense, Defendants bear the burden of proving nonexhaustion.  *Wyatt*, 315 F.3d at 1119.

Finally, "pro se claims are construed liberally for purposes of the exhaustion requirement."  *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (immigration context) (relying on *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002) and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## GRIEVANCE PROCESS OF THE IDAHO DEPARTMENT OF CORRECTION (IDOC)

The ICC follows the IDOC's simple grievance process that consists of three stages.  (Docket No. 29-2, ¶ 3.)  First, any inmate with a concern is required to seek an informal resolution by filling out an offender concern form addressed to the staff person "most directly involved" with the inmate's issue.  (*Id.* At ¶ 7.)  If the

MEMORANDUM DECISION AND ORDER 6

issue cannot be resolved informally with a concern form, the inmate must then file a grievance form.  (*Id.* at ¶ 8.)  Until November 28, 2007, the grievance form had to be submitted within 15 days of the incident giving rise to the grievance.  (*See id.*; *see also* Ex. B., ¶ 5.)  Since that date, the time for filing a grievance form has been increased to 30 days.  (*See id.*)  However, an extension of time may be granted by the reviewing authority.  (*Id.*; *see also* Ex. C., ¶ 5 & Ex. D., ¶ 5.)

When submitting a grievance form, the inmate must attach a copy of the offender concern form, showing the inmate's attempt to settle the issue informally. Aside from including information regarding the nature of the complaint, the grievance form must contain specific information including dates, places, and names.  (*Id.* ¶ 9.)  Only one issue may be raised in each grievance, and the offender must suggest a solution to the issue.  (*Id.*)

Before November 28, 2007, staff had to answer and return the inmate's grievance to the Grievance Coordinator within 7 working days.  (*Id.*)  Currently, staff must answer and return the grievance to the Grievance Coordinator within 10 working days.  (*Id.*)  Then, the Grievance Coordinator forwards the grievance and response to a "reviewing authority," usually a Deputy Warden.  (*Id.*)  After the reviewing authority responds to the grievance, the Grievance Coordinator files the original grievance form, creates an electronic copy, and returns a copy of the

MEMORANDUM DECISION AND ORDER 7

electronic form to the offender with the responses of the assigned staff member and the reviewing authority.  (*Id*.)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision.  Previously, the inmate had to file such an appeal within 10 days of receiving the response to the grievance.  (*Id.* at ¶ 10.)  Currently, the grievance policy requires an appeal within 5 days of the inmates receiving the response to the grievance.  (*Id.*)  When the Grievance Coordinator receives an appeal, he/she is required to enter the appeal into an electronic database and forward it to the "appellate authority," typically the facility head.  (*Id*. at ¶ 11.)  The appellate authority must respond within 14 days of receipt of the grievance appeal, and return the response to the Grievance Coordinator, who logs the response and forwards it to the offender.  (*Id*.)

However, Grievance Coordinators were not required to keep copies or a log of any unprocessed grievances until November 2007.  (Id. at ¶ 14.)  Since then, all grievances are logged, even if they are not processed.  (*Id.*)

## BACKGROUND AND DISCUSSION

### A.  Larry M. Hoak

Plaintiff Larry M. Hoak (L. Hoak), alleges that two inmates who were members of a prison gang assaulted him in his cell on February 24, 2008.  L. Hoak woke up in his bunk and found two inmates in his cell; the inmates then beat and robbed him.  He was again assaulted on August 1, 2008, when a prison gang member followed him into the bathroom and beat him.  He was taken to St. Luke's for treatment following the assault.  He also alleges that his cellmate, also a prison gang member, tried to poison him.

According to the applicable IDOC grievance policies for the dates of these incidents, the inmate must have filed a grievance within 30 days.  (Docket No. 29-2, Ex. C, 5; Docket No. 29-2, Ex. D, 5.)  Thus, L. Hoak was required to file a grievance regarding the February 24, 2008 incident by March 25, 2008, and a grievance regarding the August 16, 2008 incident by September 15, 2008.

Defendants have submitted the affidavit of Jennifer Gardner, Grievance Coordinator at ICC, who researched the institutional records for grievances submitted by each Plaintiff.  She declares that she reviewed records for grievances submitted by L. Hoak  between February 2008, and June 11, 2009.  (Affidavit of Jennifer Gardner, Docket No. 29-2, ¶ 15.)  Although L. Hoak submitted several

grievance forms, most were either untimely or unrelated to the incidents.  (Docket No. 34-2.)  One grievance form, filed on September 3, 2008, was on point and timely.  (Docket No. 34-2, 5.)  Ms. Gardner declares that the timely grievance was denied on September 18, 2008, and L. Hoak did not appeal the decision to the Warden.  (*Id.*)

There is no evidence in the record that L. Hoak filed an appeal.  Only upon timely completion of all three of the grievance process steps will the inmate grievance process be exhausted.  Therefore, L. Hoak's Complaint must be dismissed for failure to exhaust his administrative remedies.

### B.  Shane Elloyd Romero

Plaintiff Romero alleges that he asked not to be moved to ICC and L Pod due to threats of violence there.  After he was moved, gang members threatened Romero.  Allegedly, he made several verbal complaints to staff members regarding the threats and his imminent danger.  He alleges that because of these threats, he felt compelled to strike first at the gang member who had been threatening him in order to avoid a later situation where he would be outnumbered and attacked.  On October 14, 2008, he confronted the gang member in the chow hall, where he knew the fight would be stopped quickly.  As a result, Plaintiff's nose was broken and he suffered other injuries.  Romero was placed in segregation after the fight.

MEMORANDUM DECISION AND ORDER 10

The ICC Grievance Coordinator reviewed institutional records for grievances submitted by Romero between October 2008, and June 11, 2009. (Docket No. 29-2, ¶ 16.)   According to her review, no grievances were submitted by Romero within the specific administrative exhaustion time frame that were related to the incident.  (*Id.*)

In response, Romero claims he did not exhaust his administrative remedies because he was in imminent danger.  (Docket No. 36-1, 3.)  However, Romero's claim of imminent danger is not supported by the record.  Since Romero had time to make verbal complaints to staff members regarding threats and his imminent danger, he could also have taken a few minutes to fill out a concern form. Moreover, after the incident, Romero was put in segregation.  The purpose of segregation is to remove an inmate from the prison's general population.  Because Romero was segregated, he was also removed from the portion of the population that wanted to harm him.  Thus, after the incident Romero was not in imminent danger and was free to exhaust his administrative remedies.

Next, Romero claims that until he received a copy of the IDOC policy on June 11, 2009, he was ignorant of the proper grievance process.  (Docket No. 36-2, 6, #33.)  However, records submitted by Romero indicate that he was familiar with the process.  According to the record, Romero filed several concern forms and one

MEMORANDUM DECISION AND ORDER 11

grievance form prior to June 11, 2009.  In the grievance form dated June 5, 2009, Romero complains about a staff member intervening in concern forms that were not addressed and/or sent to the staff member.  (Docket No. 36-3, 7.)  Romero's suggested solution was a reprimand for not following the proper channels of authority.  (*Id.*)  At the bottom of the form, Romero writes, "this grievance to be appealed." (*Id.*)  Because the June 5 grievance form includes references to the proper channels of authority and the ability to appeal, it is evident that Romero had a working knowledge of the grievance process.  Therefore, the Court finds that Romero had the knowledge to exhaust his administrative remedies.

Finally, according to the applicable IDOC grievance policy for the date of this incident, the inmate must file a grievance within 30 days.  (Docket No. 29-2, Ex. C, 5.)  Thus, Romero  was required to file a grievance regarding the October 14, 2008 incident by November 13, 2008**.**  Although Romero did submit several concern forms within the applicable time frame, he did not provide evidence that he filed a grievance appeal form by November 13, 2008.  Therefore, Romero's Complaint must be dismissed for failure to exhaust his administrative remedies properly.

MEMORANDUM DECISION AND ORDER 12

### C.  Arthur Allen Hoak

Plaintiff Arthur Hoak (A. Hoak) was an inmate at ICC.  Officers knew that Plaintiff's brother, L. Hoak, had been assaulted by gang members.  L. Hoak had also warned officers that A. Hoak might be assaulted by the same gang members. On March 10, 2008 two inmates entered A. Hoak's cell and began to hit him.  An additional inmate joined them, and the three inmates continued to beat A. Hoak. As a result, he alleges to suffer from blurred vision; pain in his head, neck, wrist, and leg; and Post Traumatic Stress Syndrome (PTSS).  A. Hoak alleges that the effects of his PTSS medication made him unable to fill out the grievance process, so L. Hoak filled out the forms for him.

The ICC Grievance Coordinator reviewed institutional records for grievances submitted by A. Hoak between March 2008, and June 11, 2009. (Docket No. 29-2, ¶ 17.)   According to her review, no grievances were submitted by A. Hoak or another inmate on behalf of A. Hoak within the specific administrative exhaustion time frame that were related to the incident.  (*Id.*)

In response, A. Hoak asks the Court to give him a waiver "to proceed on a higher level of filing[] to an entity that has the power . . . to grant all relief [] sought . . . ."  (Docket No. 33, 3.)  However, there is no provision of law permitting this Court to "waive" exhaustion.  The United States Supreme Court has explained:

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. at 85.

Next, A. Hoak argues that forcing him to exhaust his administrative remedies when he is seeking money damages, is forcing him to file frivolous forms because the prison cannot provide money damages as a remedy. (Docket No. 33,3.) The United States Supreme Court clearly rejected this argument in *Booth v. Churner*, where it held that an inmate who seeks money damages for a prison conditions claim must complete the prison administrative process, even if the process does not provide for money damages. 532 U.S. at 733. Further, an inmate must exhaust his remedies *prior* to filing suit; exhaustion cannot be accomplished during a suit or after a suit has been filed. *See McKinney v. Carey,* 311 F.3d 1198 (2002).[2]

In the alternative, A. Hoak claims that he exhausted his administrative remedies when L. Hoak completed the grievance forms for him. (*Id.*) According to the applicable IDOC grievance policy, if an inmate is physically unable to complete a grievance form, another person may complete the form for them. (Docket No. 29-2, Ex. C, 3.) Therefore, due to the undisputed allegation that A.

---

[2] Controlling public policy states that all prison complaint forms, even "frivolous" ones, are an opportunity for prison staff "to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

MEMORANDUM DECISION AND ORDER 14

Hoak was physically unable to complete a grievance form because of his PTSS medication, L. Hoak completing the grievance form on behalf of A. Hoak is satisfactory.  However, L. Hoak must have filed a grievance on behalf of A. Hoak within 30 days of the assault.  Thus, because the incident occurred on March 10, 2008, all grievances must have been filed by April 9, 2008.  Although A. Hoak and L. Hoak submitted many grievance forms, none was submitted within the 30-day time period.  For example, the grievance form attached to A. Hoak's Response to the Motion to Dismiss states that the offender's name is "Larry Hoak" and the date is "5/29/08."  (Docket No. 33, p. 7.)  Because A. Hoak failed to exhaust his remedies in a timely manner, his Complaint must be dismissed for failure to comply with § 1997e(a).

### D.  Robert L. Meeks

Plaintiff Meeks alleges that on September 9, 2008, the first day he was moved to ICC's J-pod, a group of inmate gang members beat him.  He alleges that staff members knew of the continuing problems of violence existing in that unit.  As a result of the beating, he suffered a fractured rib and punctured lung.  Meeks alleges that he had a very difficult time recuperating, and that he was placed on suicide watch as a result of his psychological reaction to the trauma he suffered.  He alleges that he filed grievance paperwork but received no reply.

The ICC Grievance Coordinator reviewed institutional records for grievances submitted by Meeks  between September 2008, and June 11, 2009. (Docket No. 29-2, ¶ 18.)   According to her review, "no grievances were submitted, processed, or logged by Inmate Robert L. Meeks within the specific time frame, related to any of the allegations which are the subject of this lawsuit, as to any of the named ICC and IDOC Defendants."  (*Id.*)  According to the applicable IDOC grievance policy for the date of this incident, the inmate was required to file a grievance within 30 days.  (Docket No. 29-2, Ex. D, 5.)  Thus, Meeks was required to file a grievance regarding the September 9, 2008 incident by October 9, 2008.

Meeks presents no evidence that he filed a timely grievance, but shows only that he filed two very late inmate concern forms, referring to two concern forms dated February 13, 2009 (Docket No. 37, p. 13) and March 5, 2009 (Docket No. 37, p. 12).  He argues that he received no replies to the concern forms.

The writing in the "staff section" of the February 13, 2009 form indicates he received a reply on February 27, 2009.  The March 5, 2009 contains a staff signature acknowledging receipt of the concern form, but the reply section is blank. According to the grievance policy under offender concern forms, "[i]f a staff member does not respond . . . the offender can elect to send another Offender Concern form to another staff member or use the grievance process."  (Docket No.

MEMORANDUM DECISION AND ORDER 16

29-2, Ex. D, p. 4.)  Meeks did not present any evidence that he submitted a grievance form and grievance appeal.

Thus according to the record, Meeks has presented no evidence that he timely exhausted his remedies.  As a result, Meeks' Complaint must be dismissed for failure to comply with § 1997e(a).

### E.  Michael T. Hayes

Hayes alleges that in September 2006 he complained to prison staff that other inmates were threatening him because he was a sex offender.  On October 11, 2006, a housing placement committee reviewed Plaintiff's request to be placed in protective custody.  They denied the request, and their decision was approved on October 12, 2006.  After that, Plaintiff was returned to the general population.

Hayes alleges that on January 21, 2007, March 20, 2007, and April 2, 2007, he filed inmate concern forms to inform staff that he was having problems with other inmates in his housing unit and to ask for a transfer for his safety and protection.  He received no response.

On April 14, 2007, Hayes was beaten and robbed by other inmates.  He was then treated for his injuries and placed in the Segregation Management Unit (SMU). While in SMU, he informed staff of the identities of the assailants, of their affiliation with a white supremacy group who had previously assaulted other sex

offender inmates, and of Hayes' belief that part of the assault had been recorded on the dayroom video cameras.  When staff did nothing, Hayes sent an inmate concern form.  Staff still did nothing.

According to the applicable IDOC grievance policy for the date of April 14, 2007, Hayes was required to file a grievance within fifteen days.  (*See* Docket No. 29-2, Ex. B, 5.)  Thus, Hayes was required to file a grievance regarding the April 14, 2007 incident by April 29, 2007.

With his Response to the Motion to Dismiss, Hayes presents a copy of an April 27, 2007 grievance form as an exhibit to his affidavit, and he declares that he filed it on that date.  (Docket No. 40, p, 8 & ¶ 3.)  Hayes declares that he made a second attempt to grieve the prison's failure to protect him by submitting a grievance form submitted on June 30, 2007.  (Docket No. 40 ¶ 16.)  When staff returned the June 30 grievance form to Hayes unprocessed with a grievance return specifying that the grievance was late, Hayes circled the word "appeal" in the prison staff response area of the grievance form and placed it back in the lockbox for grievances and appeal.  (Docket No. 40, 35, & 46.)  Staff again returned the form unprocessed to Hayes on July 9, 2007.  (Docket No. 40, 33 & 34 & Plaintiff's Motion to Correct, Docket No. 45).[3]

---

[3] Plaintiff has submitted a Motion to Correct, wherein he states that he made a mistake in his affidavit at ¶ 16, and the date "July 18, 2007" should read "July 9, 2007."  (Docket No. 46.)

MEMORANDUM DECISION AND ORDER 18

The ICC Grievance Coordinator reviewed institutional records for grievances submitted by Hayes between September 2006, and June 11, 2009, and no grievances related to the incident were submitted by Hayes within the specific administrative exhaustion time frame.  (Docket No. 29-2, ¶ 19.)  Defendants argue that there is no evidence that the April grievance form was actually submitted, and that the June grievance form and the July "appeal" grievance form were submitted outside the applicable 15-day time limit.

The Court agrees that if the June 30, 2007 grievance form was the first submitted, it was outside the applicable time period.  However, Hayes' affidavit and copy of the grievance form are evidence that the first grievance submitted was on April 27, 2007.  While Jennifer Gardner asserts that she "found no record of a completed grievance form relating to 'protective custody' that was dated April 27, 2007," she also declares that "[a]s the Grievance Coordinator, [she] was not required to keep copies or a log of any **unprocessed** grievances until November 2007, when the revised SOP 316 was issued."  (Docket No. 29-2, ¶¶ 6 &14 (emphasis in original).  Therefore, Defendants have no record as to whether the April 27, 2007 grievance form was submitted but not processed.  The only evidence in the record shows that Hayes filed a timely grievance; Defendants have no evidence to contest the allegation that the grievance was submitted but prison

MEMORANDUM DECISION AND ORDER 19

officials failed to respond.  Section 1997e(a) requires prisoners to exhaust only administrative remedies "available" to them.

The Ninth Circuit has not yet decided whether exceptions to the exhaustion requirement exist.  *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008). However, other circuits have held that the exhaustion requirement is satisfied when prison officials prevent exhaustion from occurring through misconduct or failure to respond to a grievance within the policy time limits.  *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (administrative remedy not available if prison employees do not respond to a properly filed grievance or use affirmative misconduct to prevent a prisoner from exhausting); *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) ("administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance"); *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (inability to utilize inmate appeals process due to prison officials' conduct or the failure of prison officials to timely advance appeal may justify failure to exhaust); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (failure to respond to a grievance within the policy time limits renders remedy unavailable); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (district

court did not err when it declined to dismiss claim for failure to exhaust where

prison failed to respond to grievance); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir.

1999) (when a valid grievance has been filed and the state's time for responding

has expired, the remedies are deemed exhausted).

Here, Hayes has submitted evidence showing he submitted a timely

grievance (filed April 27, 2007 for the April 14, 2007 incident), but did not receive

a response.  While the 2001 version of the prison grievance system entitled the

inmate to file an appeal if prison officials did not respond to the grievance (Exhibit

A, Gardner Affidavit, Docket No. 29-2, p. 19.), the 2004 version states only that

the appeal process is available "[i]f the offender is not satisfied with the reviewing

authority's response," but does not authorize an inmate to proceed to an appeal if

he received no response.  (Exhibit B to Gardner Affidavit, Docket No. 29-2, p. 19.)

Gardner's Affidavit appears to state that the 2001 and the 2004 versions *both*

applied during Hayes' time period for exhausting of this claim ("Exhibit A . . .

IDOC policy 316 . . . was in effect between February 2001 and March 31, 2008";

"Exhibit B . . . IDOC Division of Operations Directive 316.02.01.001 . . .  was in

effect between September 16, 2004 and November 28, 2007").  (Gardner Affidavit,

¶ 3.)  Because Defendants present two conflicting, overlapping grievance

procedures, it is appropriate to require Plaintiff to follow only one of those – the

MEMORANDUM DECISION AND ORDER 21

most current – which requires no appeal if there is no grievance response.

Thus, the Court concludes that Hayes has carried his burden to prove he exhausted his available remedies.  Defendants' Motion to Dismiss shall be denied as to Plaintiff Hayes, and Hayes may proceed with his claims.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the ICC Defendants' Motion to Dismiss (Docket No. 29) is GRANTED in part to the extent that the Complaints of Plaintiffs Larry M. Hoak, Shane Elloyd Romero, Arthur Allen Hoak, and Robert L. Meeks are DISMISSED without prejudice for failure to properly exhaust administrative remedies.  These cases shall remain part of the consolidated case.  Because all of the Complaints that will remain in the consolidated case shall be dismissed, the Court will enter judgment on those Complaints, and they shall be immediately appealable.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Dismiss (Docket No. 29) is DENIED in part to the extent that Plaintiff Michael T. Hayes exhausted his administrative remedies and may proceed on his Amended Complaint (Docket No. 51).  Plaintiff Hayes' case, 1:09-CV-122-BLW, shall be deconsolidated from the above case(s), so that it can proceed under its own case number, 1:09-CV-122-BLW.  Plaintiff Hayes is not proceeding in forma pauperis

MEMORANDUM DECISION AND ORDER 22

and failed to follow the Court's previous instruction to file a separate complaint to address his medical claims (Docket No. 26), but he has instead filed an amended complaint in the consolidated action containing all of his claims.  The Clerk of Court shall remove Plaintiff Hayes' Amended Complaint (Docket No. 51 in 1:08-CV-402) from the consolidated case and file it in Case No. 1:09-CV-122-BLW.  Plaintiff Hayes shall be responsible for effecting service of process upon Defendants **within 120 days after entry of this Order**, or his case may be subject to dismissal.  The Clerk of Court shall issue summonses to each named Defendant in Hayes' action and forward the summonses to Plaintiff with his copy of this Order.

IT IS FURTHER HEREBY ORDERED that Plaintiff Riggs' case shall be deconsolidated and proceed under its own separate case number, 01:09-CV-10-BLW.  It shall be set for pre-answer mediation.  The Clerk of Court has informed the Court that several similar cases against ICC officials have been filed recently.  If the new cases survive initial review and are not subject to a motion to dismiss for failure to exhaust administrative remedies, then the Court will likely schedule pre-answer mediation of all of the similar cases at the same time.

IT IS FURTHER HEREBY ORDERED that Plaintiff Gilbert's case, 1:09-CV-01-BLW, shall also be deconsolidated and proceed on its own, for the reason

MEMORANDUM DECISION AND ORDER 23

that the incident complained of occurred at the Idaho State Correctional Institution, rather than the Idaho Correctional Center.  In addition, Plaintiff Gilbert has been released on probation or parole (Docket No. 50), and it is unclear whether he still qualifies for in forma pauperis status.  Further, it is the Court's understanding that Defendant John Hardison is deceased.  If Plaintiff wishes to continue to proceed in forma pauperis, he will have to provide a new application to proceed in forma pauperis, showing his current monthly income (including any governmental aid) and expenses.  In addition, he cannot proceed on his current complaint, and he will have to file an amended complaint in 1:09-CV-01-BLW naming a new or substitute defendant.  Plaintiff is encouraged to seek the assistance of his own counsel to determine how to proceed.  Plaintiff's new application to proceed in forma pauperis and amended complaint shall be due no later than **thirty days after entry of this Order**.

IT IS FURTHER HEREBY ORDERED that Plaintiff Hayes' Motion to Consolidate with Case No. 1:09-CV-523-BLW, *Butters v. CCA*, (Docket No. 5 in 1:09-CV-122-BLW) is DENIED without prejudice.  Should Plaintiff Butters' case survive initial review and avoid  dismissal for failure to exhaust administrative remedies, then the Court will consider setting it for mediation at the same time Plaintiff Hayes' case is set for mediation.

MEMORANDUM DECISION AND ORDER 24

IT IS FURTHER HEREBY ORDERED that Plaintiff Romero's Motion for Reconsideration to Deny Defendants' Motion to Reconsider Initial Review Orders Regarding Filing Additional Pleadings (Docket No. 24) is DENIED.  As noted above, the Court has considered Plaintiff Romero's contentions that he could not exhaust his administrative remedies because of imminent danger and because of his belief that he would have received more severe injuries had he not acted as he did.

IT IS FURTHER HEREBY ORDERED that Plaintiff Romero's Motion to Deny Motions to Dismiss and for Summary Judgment "Reconsider" (Docket No. 25) are DENIED.  The Court has considered Plaintiff's contentions that he gave verbal warnings to prison staff.

IT IS FURTHER HEREBY ORDERED that Plaintiff Michael Hayes' Motion to Strike Affidavit of Jennifer Gardner (Docket No. 39) is DENIED.  The Court has considered the content of Plaintiff's Motion and exhibits in deciding the Motion to Strike.

IT IS FURTHER HEREBY ORDERED that Plaintiff Michael Hayes' Motion for Rule 60(a) to Correct Clerical Mistakes re: Affidavit (Docket No. 46) is GRANTED.  The Court has considered the corrections in deciding the Motion to Dismiss.



DATED:  **November 9, 2009**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

MEMORANDUM DECISION AND ORDER 26